UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK BARA,
SHERRY BARA,

    Plaintiffs,

               Case No. 13-cv-13063
               Honorable Gershwin A. Drain

v.

TRIMAC TRANSPORTATION EAST, INC.,

    Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#18]

### I. INTRODUCTION

  This case was removed by Defendant, Trimac Transportation East, Inc. ("Trimac"), from the Wayne County Circuit Court on July 17, 2013 [#1]. Plaintiff, Patrick Bara, filed a premises liability claim in his amended complaint [#6] on October 16, 2013, alleging that Defendant breached the following Michigan common law duties as a business invitor: (1) the duty to warn Plaintiff of any known dangers on Defendant's premises; (2) the duty to ensure that Defendant's premises remain safe for business invitees; and (3) the duty to inspect Defendant's premises and make any necessary repairs or warn Plaintiff of any discovered hazards. Patrick Bara's wife, Plaintiff, Sherry Bara, joined the amended complaint bringing a claim for loss of love, support, companionship and consortium as a direct and proximate result of Defendant's alleged breach.

  Presently before the court is Defendant's Motion for Summary Judgment [#18] filed on July 11, 2014. This matter is fully briefed and a hearing was held on October 1, 2014. For the reasons that follow, the Court will **DENY** Defendant's Motion for Summary Judgment.

## II. FACTUAL BACKGROUND

On January 23, 2012 Plaintiff sustained injuries as a result of a slip and fall that occurred on premises owned by Defendant. Defendant is a foreign corporation with its principle place of business located in Houston, Texas. The Defendant provides tanker washing and maintenance services in the bulk trucking industry. The alleged incident took place at Defendant's facility located on Beech Daly Road in Taylor, Michigan.

At the time of the incident, Plaintiff was working as a hazardous material tanker driver for Distribution Technologies, Inc. ("Distribution Technologies"). Distribution Technologies is a bulk tank carrier that picks up and delivers liquid chemicals via tractor-tanker to and from various industries. Distribution Technologies rented space in Defendant's Taylor, Michigan location in order to have the chemicals from Distribution Technologies' tankers and hoses cleaned between each delivery and pick-up. As a part of the agreement between Defendant and Distribution Technologies, Defendant was responsible for washing the tankers and hoses of Distribution Technologies.

Defendant washed the tankers and hoses in Defendant's tank washroom. The front or east side of Defendant's Taylor, Michigan facility, including the tank washroom, faces eastward, looking onto Beech Daly Road. On the front or east side of the building are two bay doors where Defendant's employees pull tankers into the tank washroom. Also located on the east or front side of the building is a smaller "dock door," which is used by trucks for unloading or loading. The dock door's entrance is located approximately 5 feet off the ground. A "man door" for pedestrians is located on the northeast corner of the building. On the back or west side of Defendant's washroom are two bay doors where the tankers can exit after being cleaned. A "man door" is also present on the back or west side of the washroom.

In order to timely make his required delivery on behalf of Distribution Technologies for the day, Plaintiff asserts that he arrived at Defendant's Taylor, Michigan facility at 7:00 a.m. on the morning of Monday January 23, 2012. On that morning, the front and back bay doors to Defendant's tank washroom were kept locked until Defendant began operations at 8:00 a.m. Plaintiff asserts that the "man door" on the northeast side of the building was also locked. Further, Plaintiff asserts that the smaller dock door on the front of the building was also kept locked, and impossible for a pedestrian to use because it is so high off the ground.

In order to perform his job as a hazardous tank car driver, Plaintiff needed clean twenty-foot long hoses with metal fittings in order to empty the chemicals from his tanker during his deliveries. Generally, employees of Defendant placed these hoses on the tractor or the trailer-tanker after they were cleaned, or left the hoses in the tank washroom. Plaintiff asserts that there were no clean hoses on the back of his tractor or tanker when he arrived on the morning of January 23, 2012. Further, because it was 7:00 a.m., and no employees of Defendant were present, Plaintiff claims he was forced to enter Defendant's tank washroom himself in order to get the clean hoses to complete his deliveries.

Plaintiff asserts he entered the tank washroom through the pedestrian "man door" at the back of the building as he normally would. Upon entry, Plaintiff states that he encountered an unusually flooded washroom floor, with the water reaching the top of his ankles. The water was deep enough that plaintiff could not see potential hazards. Plaintiff asserts he shouted for assistance, but no one responded. After seeing the clean hoses he needed hanging on a rack across the tank wash room, and noting that the water was potentially dangerous, Plaintiff decided to walk carefully to the other side of the room to retrieve the hoses. Plaintiff ultimately made it across the room, obtained two clean hoses, and attempted to return across the room to exit.

Plaintiff had to return across the room because the door from which he entered was the only unlocked door at that time in the morning. While carrying the hoses, Plaintiff noted that the hoses were quite heavy. While returning across the room with the heavy hoses, Plaintiff asserts that he saw a chemical area on the floor adjacent to the flooded area. Due to the weight of the hoses, Plaintiff began dragging the hoses through the flooded tank washroom. While walking towards the only unlocked door with the hoses in tow, Plaintiff asserts he slipped on the chemicals after one of the two twenty-foot long hoses he was carrying was caught on something under the water. According to Plaintiff, the slip and fall occurred between 7:15 and 7:30 a.m.

Following the fall, at approximately 8:30 a.m., Plaintiff informed his immediate supervisor, Mr. Mark Daugherty, of the events when Daugherty arrived at work. After learning of Plaintiff's fall, Mr. Daugherty immediately went in to the tank washroom and noted that the whole room was flooded by what he described as a foot of water. After being notified of the events, Distribution Technologies' branch manager in Taylor, Mr. Timothy Kuschel, came to the scene. Upon arrival, and without entering the tank wash room, Mr. Kuschel noted from outside that the tank wash room was so flooded that water was coming out of the bay doors on the outside of the building.

Mr. Kuschel conducted an investigation on behalf of Distribution Technologies and learned from a supervisor of Defendant that a "hose-cleaning" machine had been left on in the tank washroom over the weekend. Mr. Kuschel noted these statements in his accident report, but did not note the name of the supervisor of Defendant. No photographs were taken of the flooded tank washroom floor on the day of the accident. Plaintiff asserts that his injuries were severe enough to necessitate several shoulder operations, and that the injuries have permanently disabled him from his employment with Distribution Technologies.

## III. LAW & ANALYSIS

**A.    Standard of Review**

Defendant removed this case to this Court on July 17, 2013 pursuant to 28 U.S.C. § 1441. This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332.  Thus, according to the *Erie* doctrine, Michigan law will govern the substantive issues raised herein while federal law will govern the procedural matters. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State."); *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 417, 116 S. Ct. 2211, 135 L.Ed.2d 659 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021, 85 L. Ed. 1477 (1941) (holding that federal courts sitting in diversity are to apply the choice-of-law rules of the state in which the court sits in order to resolve conflicts between state laws); *see also Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014).

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the Court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The evidence, and all reasonable inferences, must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

**B.     Legal Analysis**

In Michigan, "[i]t is well-established that a prima facie case of negligence requires a plaintiff to prove four elements: duty, breach of that duty, causation, and damages." *Fultz v. Union-Commerce Associates*, 470 Mich. 460, 463, 683 N.W.2d 587, 590 (2004). With regard to premises liability, "Michigan has recognized three common-law categories for persons who enter upon the land or premises of another: (1) trespasser, (2) licensee, or (3) invitee." *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 596, 614 N.W.2d 88, 91 (2000), *as amended* (Sept. 19, 2000) (citation omitted). The Supreme Court of Michigan has been clear in stating that "[e]ach of these categories corresponds to a different standard of care that is owed to those injured on the owner's premises. Thus, a landowner's duty to a visitor depends on that visitor's status." *Id.* (citation omitted).

The Michigan Supreme Court defines an invitee as "a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception." *Id.* at 596-97, 614 N.W. 2d a 92 (internal quotations omitted) (citation omitted). Here, the parties do not dispute that Plaintiff was an invitee at the time of his injury. Thus, in this situation, the Plaintiff "is entitled to the highest level of protection under premises liability law." *Id*. at 597, 614 N.W. 2d a 92 (citation omitted).

With regard to the duty Defendant owed Plaintiff, Michigan has held that a premises possessor generally "owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v. Ameritech Corp.*, 464 Mich. 512, 516, 629 N.W.2d 384, 386 (2001). Specifically, pursuant to Michigan law, the Defendant "has a duty of care, not only to warn the invitee of any known

dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Stitt*, 462 Mich. at 597, N.W.2d at 92 (citation omitted).

### 1. Open and Obvious

Although Defendant owed Plaintiff a duty to exercise reasonable care to protect Plaintiff from an unreasonable risk of harm, "the general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers[.]" *Lugo*, 464 Mich. at 517, 629 N.W.2d at 386. An open and obvious danger exists "where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them[.]" *Riddle v. McLouth Steel Products Corp.*, 440 Mich. 85, 96, 485 N.W.2d 676, 681 (1992) (citation omitted).

According to the Michigan Supreme Court, the test for "[w]hether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner v. Lanctoe*, 492 Mich. 450, 461, 821 N.W.2d 88, 94-95 (2012) (citations omitted). The standard "is an *objective standard,* calling for an examination of 'the objective nature of the condition of the premises at issue.' " *Id.* (citing *Lugo*, 464 Mich. at 523-24, 629 N.W.2d 384) (emphasis in original).

Here, Plaintiff does "not dispute that the water flooding the tank wash room floor was open and obvious." Dkt. No. 22 at 17. Accordingly, there is no genuine issue of material fact that the conditions in the tank washroom floor were open and obvious.

### 2. Special Aspects

However, according to the Michigan Supreme Court, "if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo*, 464 Mich. at 517, 629 N.W.2d at 386. Thus, even if a "condition is open and obvious, a plaintiff who is injured by the condition may avoid summary disposition *only if there are special aspects* to the condition." *Hoffner,* 492 Mich. at 464, 821 N.W.2d at 97 (emphasis added).

The Michigan Supreme Court "has discussed two instances in which the special aspects of an open and obvious hazard could give rise to liability: when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable.*" *Hoffner*, 492 Mich. at 463, 821 N.W.2d at 96 (emphasis in the original). With regard to these two circumstances, the Court has explained:

> *In either circumstance,* such dangers are those that "give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided" [*Lugo*, 464 Mich. at 519 n.2, 629 N.W.2d at 387 n.2,] and thus must be differentiated from those risks posed by ordinary conditions or typical open and obvious hazards. Further, we have recognized that neither a common condition nor an avoidable condition is uniquely dangerous. [*Id.* at 520, 629 NW.2d at 387-88.] Thus, when a plaintiff demonstrates that a special aspect exists or that there is a genuine issue of material fact regarding whether a special aspect exists, tort recovery may be permitted if the defendant breaches his duty of reasonable care.

*Id.* (emphasis in original).

To explain a situation where an open and obvious hazard is effectively unavoidable, the court in *Lugo* gave the example of standing water covering a floor in a situation where a person wishing to exit was required to travel through the water to the only available exit. 464 Mich. at 518, 629 N.W.2d 387. In such a situation the court explained that the circumstances made the open and obvious hazard effectively unavoidable. *Id.*

For unreasonably dangerous situations, the court noted that there must be special aspects that impose an unreasonably high risk of severe harm. *Id.* For this example, the court explained a situation where there was an unguarded thirty-foot deep pit in the middle of a parking lot. *Id.* Even though such a situation would be open and obvious, the Court noted that the "substantial risk of death or severe injury to one who fell in the pit" would make it unreasonably dangerous if such a condition was not addressed by the premises owner; "at least absent reasonable warnings or other remedial measures being taken." *Id.* Accordingly, the Court in *Lugo* concluded by finding that "only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine." 464 Mich. at 519, 629 N.W.2d 387-88 (citation omitted).

Here, Defendant argues that given the facts of this case, the standing water was neither unreasonably dangerous nor effectively unavoidable for Plaintiff. Dkt. No. 18 at 9-11. Plaintiff argues that a genuine issue of material fact does exist as to whether Defendant's flooded floor created a special aspect, thereby imposing a duty of care upon the Defendant. Dkt. No. 22 at 16. According to Plaintiff, a special aspect existed "because when [Plaintiff] needed to exit the building, the water obscured objects on the floor that might catch the hoses [Plaintiff] was required to drag through the water towards the only available exit." *Id.* (citing *Lugo*, 464 Mich. at 518, 629 N.W.2d at 387). Plaintiff contends that the unusually deep standing water on Defendant's floor created an unreasonably unsafe condition. *Id.* at 18.

Looking at the evidence in the light most favorable to the non-moving party, the Court agrees with Plaintiff on this issue. In *Lugo*, the Michigan Supreme Court specifically noted that standing water on the floor with only one means of escape created an effectively unavoidable situation. *See Lugo*, 464 Mich. at 518, 629 N.W.2d at 387. Then, in *Hoffner*, the court

-10-

specifically indicated that the hypothetical of standing water with one exit was a situation where "an effectively unavoidable condition was set in the context of a condition *that is inherently dangerous and thus poses a severe risk of harm.*" *Hoffner*, 492 Mich. at 465, 821 N.W.2d at 97. Accordingly, here, when Plaintiff was forced to return with the hoses to the only unlocked door, he was placed in an effectively unavoidable situation that imposed a severe risk of harm.

Defendant puts forth a compelling argument that no special aspect exists because Plaintiff chose to enter the washroom and get the hoses. *See* Dkt. No. 18 at 9-11. Indeed, in *Hoffner* the Michigan Supreme Court found that "situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Hoffner,* 492 Mich. at 469, 821 N.W.2d at 99; *see also id.* at 471-72, 821 N.W. 2d 88, 101 (noting that "it cannot be said that compulsion to confront a hazard by the *requirement of employment* is any less 'avoidable' than the need to confront a hazard in order to enjoy the privileges provided by a contractual relationship," and explicitly rejecting Plaintiff's argument that ice that caused her harm was effectively unavoidable and, thus, constituted a special aspect, because she had a contractual right to enter Defendant's facility as a paid member).

However, this case is distinguishable from the situation in *Hoffner*. The court in *Hoffner* found that there was "no dispute that the ice constituted an open and obvious danger," and found that because the Plaintiff in that case did not show that the hazardous ice "had any special aspects," the Plaintiff was "precluded from recovering in tort as a matter of law." 492 Mich. at 473-74, 821 N.W.2d at 102.

Here, although Plaintiff made a choice to walk across the water, he has also stated that the water was unusually deep and that the water obscured his view of potential hazards that posed a severe risk of harm. Here, the opaque and unusually deep water Plaintiff encountered

-11-

differs from the open and obvious slippery ice in *Hoffner* because the Plaintiff here could not see hazards in the water like the Plaintiff in *Hoffner* could see the ice. Furthermore, the Plaintiff here has noted that all of the exits – except the one from which he entered – were locked once he obtained the hoses.

Looking at the this evidence in the light most favorable to the non-moving party, the Court finds that Plaintiff has put forth enough evidence to create a genuine issue of material fact regarding whether a special aspect exists. *See Lugo*, 464 Mich. at 518, 629 N.W.2d at 387 ("The condition might well be open and obvious, and one would likely be capable of avoiding the danger. Nevertheless, this situation [] present[s] such a substantial risk of death or severe injury to one who fell . . . that it would be unreasonably dangerous to maintain the condition, at least absent reasonable warnings or other remedial measures being taken.").

### 3. Negligence in Creating the Condition

Furthermore, even outside of the open and obvious danger doctrine, the Supreme Court of Michigan has held that premises liability may also be found as a result of injuries resulting from unsafe conditions caused by the "active negligence" of the owner or the owner's employees; or if the owner or employees either knew or should have known of the unsafe condition. *See Clark v. Kmart Corp.*, 465 Mich. 416, 419, 634 N.W.2d 347, 348-49 (2001) (quoting *Carpenter v. Herpolsheimer's Co.,* 278 Mich. 697, 271 N.W. 575 (1937)).

Given the facts of a given case, the Michigan Supreme Court has also found that actual or constructive notice on behalf the invitor can be inferred. *See Whitmore v. Sears, Roebuck & Co.*, 89 Mich. App. 3, 8, 279 N.W.2d 318, 321 (1979) ("Notice may be inferred from evidence that the unsafe condition has existed for a length of time sufficient to have enabled a reasonably careful storekeeper to discover it. . . .").

Plaintiff argues that Defendant "should have known about the flooded tank wash room because all evidence shows that the tank room was flooded because a hose washing machine was left on and only Trimac employees . . . operated the tank wash room and its hose washing machine." Dkt. No. 22 at 19. To make this point, Plaintiff points to the accident report prepared by Mr. Tim Kuschel, where Mr. Kuschel indicated that a supervisor of Defendant informed him that a hose-cleaning machine was left on over the weekend causing flooding and the accident. Dkt. No. 22 at 13-14 (citing Dkt. No. 22-11; Dkt, No. 22-3 at 12). Plaintiff argues that this statement is admissible pursuant to Rule 801 of the Federal Rules of Evidence, and further argues that Mr. Kuschel's inability to recall the name of the supervisor is inconsequential to the admissibility of the statement.

Defendant argues that Mr. Kuschel's statement is hearsay, and, accordingly, that it should be disregarded for this summary judgment motion. Dkt. No. 18 at 12 (citing, amongst other authority, *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007)). Defendant argues that without this hearsay evidence, Plaintiff "can provide no evidence to this Court that defendant had actual notice of the alleged condition prior to his fall." *Id*.

Looking at the evidence in the light most favorable to the non-moving party, this Court agrees with Plaintiff. The Sixth Circuit has found that "it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Wiley v. United States,* 20 F.3d 222, 226 (6th Cir.1994) (citations omitted). Here, the disputed testimony appears to be double hearsay as the testimony regarding the statement from the purported Supervisor of Defendant was made while Mr. Kuschel was deciphering his own handwriting from his accident report. *See* Dkt. No. 22-3 at 12; Dkt. No. 22-11. Accordingly, there is a potential problem of double hearsay as the accident report itself and the statement made

by a supervisor of Defendant would constitute hearsay if they do not satisfy any hearsay exceptions. *See* Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.").

The Sixth Circuit has noted that business records, such as the accident report here, "are potentially fraught with double hearsay," which the Sixth Circuit has explained "exists when a record is prepared by an employee with information supplied by another person." *Peak v. Kubota Tractor Corp.*, 559 F. App'x 517, 523 (6th Cir. 2014) (quoting *United States v. Gwathney*, 465 F.3d 1133, 1141 (10th Cir. 2006). In the Sixth Circuit, if information is supplied to a business by an outsider and captured in a business record, it is admissible for its truth pursuant to Rule 803(6) if the outsider is himself acting pursuant to a business duty. *Peak,* 559 Fed. App'x at 523; *United States v. Cecil,* 615 F.3d 678, 690 (6th Cir. 2010).[1]

If a party seeks to admit a business record for the truth of the matter it asserts, but the record contains information provided by an outsider who is not under a business duty to provide such information, the outsider's statement must be independently admissible pursuant to another exception to the rule against hearsay. *See Essex Ins. Co. v. Fidelity & Guar. Ins. Underwriters, Inc.,* 282 Fed. App'x 406, 411–12 (6th Cir. 2008) (finding that an interview transcript was a business record within the meaning of Rule 803(6), but ultimately finding the transcript inadmissible because the statements of the interviewee captured in the transcript were not made in the course of the interviewee's "regularly conducted business activity," and the proponent of the evidence did not argue that another hearsay exception applied). *But see Chapman v. Milford Towing & Service, Inc.,* 499 Fed. App'x 437, 446 (6th Cir. 2012) (finding that statements

---

[1] The requirement that the outsider be acting pursuant to a business duty was put in place to help ensure that statements incorporated into a business record have the same indicia of reliability as the record. *See United States v. Yates,* 553 F.2d 518, 521 (6th Cir.1977) ("The mere fact that the recordation of the third party statements is routine, taken apart from the source of the information recorded, imports no guaranty of the truth of the statements themselves.").

captured in the written transcript of a telephone conversation were admissible for their truth because the transcript was a business record pursuant to Rule 803(6) and the statement was that of a party opponent pursuant to Rule 801(d)(2)(A)).

Looking at the evidence in a light most favorable to the Plaintiff, it would appear that the provider of the information was acting pursuant to a business duty when the pertinent information was supplied to Mr. Kuschel. Mr. Kuschel specifically testified that he was talking to a supervisor of the Defendant about the supervisor's knowledge of Defendant's business. *See* Dkt. No. 22-3 at 12. Thus, despite the fact that Mr. Kuschel does not recall the supervisor's name, if the Court construes the testimony in a light most favorable to the non-moving party, the statement appears to satisfy the hearsay requirement given the standards put forth by the Sixth Circuit. *See Peak,* 559 Fed. App'x at 523; *Cecil,* 615 F.3d at 690.

However, even if the Court were to determine that the statements made in the report were made by a person not under a business duty to provide such information, it appears that the statements would still be admissible because they do not appear to be hearsay pursuant to Rule 801(d)(2)(D). This Court has examined Rule 801(d)(2)(D) and found that "[a] statement by an employee of an organization can bind the employer vicariously only if the opposite party can establish the necessary foundation." *Perry v. City of Pontiac*, 254 F.R.D. 309, 315 (E.D. Mich. 2008). To lay that foundation this Court stated:

> A sufficient foundation to support the introduction of vicarious admissions [] requires only that a party establish (1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency.

*Perry*, 254 F.R.D. at 315 (citing, amongst other cases, *Davis v. Mobil Oil Exploration & Producing Se., Inc.*, 864 F.2d 1171, 1173-74 (5th Cir. 1989)).

As is the case here, the Defendant in *Davis* argued that the testimony of the Plaintiff concerning the matter at issue in the case did not fall within the purview of Rule 801(d)(2)(D) because the Plaintiff "failed to identify by name the [employee of the Defendant] who made the revealing statement." 864 F.2d at 1174. Despite being unable to identify the declarant by name, the Fifth Circuit focused on all of the surrounding circumstances and the fact that Plaintiff's co-workers testified unequivocally that the individual who issued the order in issue was an employee of the Defendant. *Id.* Ultimately, the Court emphasized that:

> [W]hile *a name is not in all cases required*, a district court should be presented with sufficient evidence to conclude that the person who is alleged to have made the damaging statement is in fact a party or an agent of that party for purposes of making an admission within the context of Rule 801(d)(2)(D).

*Id.* (emphasis added).

Here, looking at all of the surrounding circumstances, the Court is presented with a sufficient foundation to support the introduction of a vicarious admission pursuant to Rule 801(d)(2)(D). Given the uncontested facts, the statement was made to Mr. Kuschel directly following the accident at Defendant's facility. Plaintiff testified that he was conducting an investigation at the facility of the Defendant, and that while conducting this investigation of Defendant he was sure he questioned a supervisor of the Defendant because they worked in the same building. *See* Dkt. No 18-6 at 9, 11 (deposition pages 24:4-18, 33:4-14). Looking at these facts in the light most favorable to the non-moving party, the Court is presented with a sufficient foundation to support the introduction of a vicarious admission pursuant to Rule 801(d)(2)(D). *See Perry*, 254 F.R.D. at 315.

Thus, this Court is able to admit the report pursuant to Rule 803(6), as both levels of hearsay are satisfied by an exception. Looking at the facts, the accident report appears to have been made at or near the time of the accident by Mr. Kuschel, who had proper knowledge of the

event as evidenced by his signature and the date on the record, which was the same day of the accident. *See* Fed. R. Evid. 803(6)(A); Dkt. No. 22-11. Further, looking at the evidence in a light most favorable to the Plaintiff it appears that the record was kept in the course of a regularly conducted activity and was a regular practice following accidents given the fact that the report contained a procedure of forwarding the form to District Technologies' Risk Management division as soon as possible after the incident. *See* Fed. R. Evid 803(6)(B), (C); Dkt. No. 22-11.

There does not appear to be any indication that Mr. Kuschel, or another person from Risk Management at Distribution Technologies, would be unable to serve as a custodian to show that the above-mentioned conditions were met. *See* Fed. R. Evid. 803(6)(D). Lastly, neither the source of the information nor the method or circumstances of the preparation indicate a lack of trustworthiness. *See* Fed. R. Evid. 803(6)(E); *United States v. Hathaway*, 798 F.2d 902, 907 (6th Cir. 1986) ("Once a foundation is laid, in the absence of specific and credible evidence of untrustworthiness, the proper approach is to admit the evidence and permit the jury to determine the weight to be given the records.").

Consequently, in light of the admissibility of Mr. Kuschel's accident report, the Court finds that a genuine issue of material fact exists as to whether Defendant created the dangerous condition, and whether it should have known that the condition existed.

### IV. CONCLUSION

Accordingly, for the reasons discussed herein, the Court **DENIES** Defendant's Motion for Summary Judgment [#18].

SO ORDERED.

Dated: October 7, 2014

/s/Gershwin A Drain
Hon. Gershwin A. Drain
United States District Court Judge